A. Franklin Mahoney, J.
Plaintiff bank has sued defendant bank in negligence and for breach of warranty. Both institutions are members of the Federal Reserve System and regulated by the rules and regulations of that body. The genesis of the actions is a banking transaction that occurred as follows:
On July 3, 1970 Elliott Truck and Tractor Sales, Inc. made a check payable to the order of Elliott Truck and Tractor Sales, *423 Inc. payroll account. The check was drawn against Elliott funds in the defendant bank and was in the amount of $43,550.52. On July 6,1970 the check was deposited in the Elliott payroll account in the plaintiff bank. En route to the defendant bank the check was received by intermediate banking institutions on July 7 and July 9. On the 10th of July, 1970, a Friday, it arrived at the Chester National Bank. There were insufficient Elliott funds in the defendant bank to cover the check so that institution advised the Federal Reserve Bank that it was returning the check. The timeliness of that notice is the crux of the second cause of action in warranty and the gravamen of plaintiff’s motion for summary judgment in that action.
The Federal Reserve Bank of New York Operating Circular No. 6, dated September 1, 1967, provides, in pertinent part, in paragraph 17 (c) as follows:
‘1 Uniform instructions regarding protest and advice of nonpayment ”
‘ ‘ 17. Except as provided in paragraph 18 hereof, all paying banks and collecting banks must receive, handle, and forward cash items in accordance with the following uniform instructions regarding protest and wire advice of nonpayment ”.
Regulation J of the Board of Governors of the Federal Reserve System, effective September 1, 1967 at section 210.12 states: “ (a) A paying bank which receives a cash item from or through a Federal Reserve Bank, otherwise than for immediate payment over the counter, shall, unless it returns such item unpaid before midnight of the banking day of receipt, either pay or remit therefor on the banking day of receipt, or, if acceptable to the Federal Reserve Bank concerned, authorize or cause payment or remittance therefor to be made by debit to an account on the books of the Federal Reserve Bank not later than the banking day for such Federal Reserve Bank on which any other acceptable form of timely payment or remittance would have been received by the Federal Reserve Bank in the ordinary course: Provided, That such paying bank shall have the right to recover any payment or remittance so made if, before it has finally paid the item, it returns the item before midnight of its banking day next following the banking day of receipt or takes such other action to recover such payment or remittance within such time and by such means as may be provided by applicable State law ”.
That section 4-302 of the Uniform Commercial Code provides as follows:
*424 “Payor Bank’s Responsibility for Late Return of Item.
‘ ‘ In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of
“ (a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the- item or send notice of dishonor until after its midnight deadline ”.
That paragraph (h) of subdivision (1) of section L-104 of the Uniform Commercial Code — Definitions and Index of Definitions— provides as follows: “ (h) ‘ Midnight deadline ’ with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later
From all of the above it is clear that the Uniform Commercial Code has given the effect of law to the Federal Reserve Regulations respecting the conduct of payor banks upon receipt of negotiable instruments for payment. Unequivocally, the defendant bank had the obligation, if it chose to dishonor the Elliott check, to give notice by wire to the Federal Reserve System of such nonpayment. Further, the notice could not be later than midnight of the next business day. Since the check was received Friday, July 10, the notice, to be effective, must have been given by midnight on Monday, July 13.
The defendant insists it complied with the law and regulations and cannot be held responsible if the personnel of the Western Union office delayed its -transmission beyond midnight of July 13. The plaintiff insists that the wire itself attests to its tardiness. However, this gratuitous conclusion is reached by interpreting the numerals and symbols on the wire after conversations with Western Union officials. Had plaintiff, in addition to submitting the wire itself, also presented affidavits of Western Union personnel stating that the wire was received on the 14th day of July, then defendant bank’s burden would have risen to a requirement of submission of evidentiary facts rebutting such documentary evidence (Bauer v. Harris Intertype Corp., 35 A D 2d 426). However, when such evidence is contained in the affidavit of one not having such expert knowledge, then it should be subject to cross-examination in a plenary trial.
*425 In my view, there is a triable issue of fact as to whether the defendant bank gave timely notice within the period ending at midnight of the bank’s business day next following the day of receipt of the check for payment ( Jacobson v. First Nat. City Bank, 29 A D 2d 514 ; Uniform Commercial Code, § 4 — 301).
Motion denied.